No. 4015.

(Court of Appeal, Parish of Orleans.)

## J. J. MOLL vs. CHARLES W. WALL.

1. If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before the time has expired, he shall be bound to pay such laborer the whole of his salary which he would have been entitled to receive had the full term of his services arrived. But if the laborer is discharged for a just cause the wages due him up to the day of his discharge are not forfeited.

2. So, if on the other hand, a laborer after having hired out his services should leave his employer before the time of his engagement has expired, without having a just cause of complaint against his employer, the laborer shall then forfeit all the wages that may be due him and shall moreover be compelled to repay all the money he has received, either as due for wages or in advance thereof on the running year or on the time of his engagment. But if he leaves for a just cause he is entitled to all the wages due him and is not compelled to repay what he has received on account thereof.

3. The penalty inflicted on the employer who discharges his laborer without just cause, and the forfeiture imposed on the laborer who leaves without a just cause of complaint, under Articles 2749 and 2750 C. C., may not be extended by implication to other than the specific cases mentioned in the articles supra.

4. Forfeitures are not to be implied or extended, or penalties enforced which are not directed by the law or stipulated by the parties, though the power is expressly given to the Judge to modify the penalty stipulated by the contracting parties when the principal obligation has been partly executed.

Appeal from Civil District Court, Division E.

Clegg & Quintero, J. O. Daspit and Ivy G. Kittredge for plaintiff and appellee.

J. G. Robin and W. S. Parkerson for defendant and appellant.

MOORE J. On the 17th November, 1904, plaintiff entered into a contract in writing, with the defendant under the terms of which plaintiff was to participate and perform in the

Boer War Exhibition given by defendant and called by him the "Boer War Spectacle," from the 1st day of December, 1904, to the 30th day of November, 1905. For the services to be rendered the plaintiff was to receive $1.50 per day from December 1st, 1904 to April 1st, 1905 ; and $2.16 from this latter date to November 30th, 1905, and to be provided with food and lodging accommodation. In addition to this salary the contract stipulates that the plaintiff "on the termination of this agreement" shall receive a bonus of $25.00, provided his conduct has been good and he "has not committed a breach of faith ;" and that the defendant, within fourteen days from the term stipulated for the termination of the contract, shall, at his own expense, transport the plaintiff from whatever place the exhibition is then located, to Pretoria, South Africa. On the 24th January, 1905, the "Boer War Spectacle" arrived in New Orleans and then dissatisfaction among the men arose owing partly to the character of food and lodgings furnished and partly by reason of an offer made by one Schneder, through Col. P. D. Wall of the "Boer War Spectacle" to enlist them in an expedition to Guatemala, in which country an armed insurrection then prevailed.

Upon plaintiff's complaint to the defendant that the food furnished was not of fit character it was then stipulated and agreed that in lieu of his meals being furnished to him by defendant he would commute the same by receiving fifty cents per day therefor, which amount thereafter was regularly paid plaintiff. There was no improvement however, in the quarters or lodging accommodations. These were rather poor and entailed some hardship on and discomfort to the plaintiff. These quarters were perhaps no worse than real soldiers in time of war might expect to be subjected to, but were certainly not such as "play" soldiers in time of peace might expect from those who had contracted to properly care and provide for them.

Formal complaint of quarters was made by the employees on the 6th February, 1905, and the management promised to remedy the evils complained of. No change, however having taken place by the 13th of that month, the plaintiff sent in his resignation, severed his connection with the defendant and refused to further comply with his contract.

Notwithstanding his voluntary abandonment of his em-

ployer's service he sued for the wages due for the entire term originally stipulated for—December 1st, 1904 to November 30th, 1905, and amounting to $788.59 which includes $25.00 bounty for a contract for the previous year which was still due and unpaid.

The answer admits the contract but avers that forasmuch as the plaintiff left the employ of defendant voluntarily the defendant not only does not owe plaintiff for the entire term, but that, on the contrary, even the amount due up to the date that plaintiff left, is forfeited and cannot be recovered.

There was judgment for the plaintiff as prayed for and the defendant appeals.

The respective rights of employer and employee so far as concerns the forfeiture of salary by the latter and the obligation to pay the entire salary by the former in a certain contingency though the employee may not have served his entire term is regulated by codal provisions. Art. 2749 C. C., provides that:

"If without any serious ground of complaint a man should send away a laborer whose services he has hired for a certain time before the time has expired, he shall be bound to pay such laborer the whole of his salary which he would have been entitled to receive had the full term of his services arrived."
"But" says Art. 2750 C. C., "If on the other hand, a laborer after having hired out his services, should leave his employer before the time of his engagement has expired, without having just cause of complaint against his employer, the laborer shall then forfeit all the wages that may be due him, and shall moreover be compelled to repay all the money he has received, either as due for wages or in advance thereof on the running year or on the time of his engagement."

Jurisprudence has settled it that if the employer discharges the laborer for good and sufficient cause, then and in that case the laborer does not forfeit, but may recover, the amount due him up to the date of his discharge. Nolan vs Dauks 1 R 332; Taylor vs Paterson 9 A. 251; Kessee vs Mayfield 14 A. 90.

It follows as a corolary, that if on the other hand, the laborer leaves his employer before the time of his engagement *for a just cause of complaint, he does not* forfeit all the wages that may be due him up to the date when he has left service, nor can he be compelled to repay what he has already received.

In the instant cause the plaintiff was not sent away by the employer. This is admitted by the allegations of his petition and sustained by the proof. As it is *only* in the case of a discharge *without* any serious ground of complaint, that it can be held that the wages for the entire term are recoverable, and as this is confessedly not such a case, there can be no question that plaintiff cannot recover same, unless there be merit in his contention that, forasmuch as the defendant, by not providing proper lodgings for the plaintiff violated his contract obligation in this particular, and therefore himself furnished the cause for plaintiff to quit his service, which it is contended is the same thing in effect and in principle as if the plaintiff was formally and directly discharged without just cause.

Precisely a similar contention was made in Taylor vs. Paterson 9 A. 251. In that case an overseer had been discharged before the expiration of his term of employment; his discharge was justified on the ground that he had shot and seriously wounded a slave of his employer. The latter was sued for the entire wages due for the term. Alleging discharge for cause he claimed non-liability for the wages for the entire term. He also contended that as the overseer had provoked his own discharge by the act complained of it was in principle the same as if the overseer had left without just cause of complaint and that hence the wages due him up to the date of the discharge were forfeited.

The Court held that the employer was justified in discharging the overseer and that therefore the latter could not recover for the entire term, but as to the forfeiture of what was already earned the Court said:

"The argument in support of defendant's position is that, if leaving his employer before the term of his engagement has expired, without just cause of complaint, occasions a forfeiture of wages already earned by the overseer, that by necessary implication the overseer must likewise be held to have forfeited such wages, if by his own fault, he brings upon his employer the necessity of discharging him; that to deny this would place the overseer who has been discharged for some gross wrong, such for example (as in the present case) as shooting a slave under his charge, in a better position than that of the overseer who though he may have constantly performed his duties faithfully, for a greater portion of the year,

leaves before its expiration, without just cause of complaint.

The answer to this deduction is, that the law pronounces no forfeiture for the course alleged, and to supply it, in silence of law, would be a violation of the rule that forfeitures are not to be implied or extended or penalties enforced which are not directed by law or stipulation of the parties; though the power is expressly given to the judge to modify the penalty stipulated by the agreement of the contracting parties, when the principal obligation has been partly executed. C. C. 2123.

To the same effect is Nolan vs. Dauks.

Whilst the plaintiff cannot enforce a penalty against his employer by holding him responsible for the entire salary, a penalty not directed by law nor stipulated by the parties, he is however, clearly entitled to receive the wages earned up to the time when he left his employer's service—February 13th, 1905. He did not leave without just cause of complaint; for, whilst the matter of food was adjusted by allowing so much a day cost to the plaintiff so that he could procure his own food, the lodgings furnished were clearly of a character unfit for human habitation.

The plaintiff served from Dec. 31, 1904, to Feb'y 13th, 1905, a period of 75 days at $1.50 per day, making a total of $112.50.

It is also proven that the bonus of $25.00 due on the previous year's contract had not been paid. He is entitled to judgment for these amounts. Included in the amount sued for, we omitted to state two items, viz: one of $50.00 for passage back to South Africa and the bonus of $25.00 under the contract declared on. These items cannot be allowed. The contract clearly contemplated that the plaintiff would remain in his employer's service until the end of the term stipulated, and that then and in that event *only* were the expenses of transportation and the bonus to be due.

For these reasons it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by reducing the same from seven hundred and eighty-eight 59-100 dollars to one hundred and thirty-seven 52-100 dollars and as thus amended the judgment is affirmed. The costs of appeal to be taxed against the plaintiff and appellee.

November 5, 1906.

## ON APPLICATION FOR REHEARING.

1. When a laborer leaves his employer because of a just cause of complaint against his employer, "the civil consequences resulting from his leaving the employment are not the same as if the laborer had been sent away by the employer without any serious ground of complaint."

MOORE, J. The appellee prays for a rehearing of this cause and his complaint is that we erred in reducing the amount of the judgment rendered in his favor by the District Court when it is shown that appellant "refused to accept the services of plaintiff except on conditions violative of the contract of employment which was equivalent to a discharge."

No such condition of facts exists in this cause. Defendant did not "refuse to accept the services of plaintiff" at all, nor was any condition imposed or suggested by the latter which was "equivalent to a discharge." The proof is, and the specific allegations of the petition are, that the plaintiff voluntarily abandoned and refused to continue in his employer's service because he was dissatisfied with the board and lodging furnished. We held that his cause for dissatisfaction was well founded; that he left for a "just cause" and for that reason he was entitled to his pay up to the time he left his employer's service.

For a laborer to leave his master's service "without having any just cause of complaint against his employer" is one thing but for a master to send away his laborer "without any serious ground of complaint" is altogether another thing and has, under the textual provisions of the Code, an entirely different civil effect.

In the instant cause the laborer left his employer's service because "of a just cause of complaint against his employer;" but this is by no means equivalent to the master sending away the laborer "without any serious ground of complaint."

In all the cases cited by plaintiff and appellee the laborer was *formally discharged* by the employer without just cause.

In Curtis vs Lehman 115 La. 42, confidently relied on by the plaintiff and appellee, the laborer did not voluntarily quit his employer because the latter sought to change the nature of the employment, on the contrary the Court said that Curtis "made a formal tender in writing of his services under the contract to the defendant, Lehman & Co., in the presence

77

of two witnesses, who testified that the defendant, to whom the letter was presented referred plaintiff to the attorneys of defendants and said 'I have nothing to do with it any more, my attorneys have it in charge.' " The Court then added that "under the circumstances, the reference of plaintiff to the attorney of defendants was not serious, and can be considered in no other light than *a refusal to accept the services formally tendered.* Such a reference was an invitation to a law suit, or a mere evation of the issue presented, which demanded a categorical answer."

A rehearing is denied.

December 3, 1906.